UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT A. DEL MONACO,<br><br>        Plaintiff,<br><br>v.<br><br>CZECH ASSET MANAGEMENT, LIMITED PARTNERSHIP, CZECH MANAGEMENT GP, LLC, AND STEPHEN J. CZECH,<br>        Defendants. | No. 3:14-CV-01313 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Robert A. Del Monaco brings this suit against his former employer, Czech Asset Management, LP ("CAM"), a related entity, Czech Management GP, LLC ("GP"), and CAM's principal, Stephen J. Czech. Mr. Del Monaco claims that Defendants failed to deliver a promised bonus of $200,000 for work performed in 2013, and brings claims of breach of contract against CAM and GP (Count One), promissory estoppel against CAM and GP (Count Two), and violation of Connecticut wage statutes against CAM, GP, and Mr. Czech (Counts Three and Four). Defendants now move for summary judgment on all counts, arguing among other things that Mr. Del Monaco became ineligible for a bonus when he gave notice of his resignation on June 1, 2014. (ECF No. 50.) For the reasons set forth below, the defendants' motion is GRANTED in part and DENIED in part.

1

## II.     Undisputed Facts

The following facts are undisputed. Defendant CAM is an asset management company doing business in Connecticut, Defendant GP is CAM's general partner, and Defendant Stephen Czech is CAM's Managing Partner. (Defendant's Local Rule 56(a)1 Statement, ECF No. 52 ("Def.'s L.R. 56(a)1 Stmt.") ¶¶ 1-3; Plaintiff's Local Rule 56(a)2 Statement, ECF No. 54-10 ("Pl.'s L.R. 56(a)2 Stmt.") ¶¶ 1-3. In January 2012, CAM hired plaintiff Robert Del Monaco to be its Chief Financial Officer, and he began work in March 2012. (Def.'s L.R. 56(a)1 Stmt. ¶¶ 4-5; Pl.'s L.R. 56(a)2 Stmt. ¶¶ 4-5.)

### A. Offer Letter and Employee Handbook

Prior to beginning work at CAM, Mr. Del Monaco received and acknowledged both an offer letter and the CAM employee handbook. (Def.'s L.R. 56(a)1 Stmt ¶¶ 5, 8, 10; Pl's L.R. 56(a)2 Stmt. ¶¶ 5, 8, 10.) Regarding 2012 compensation, the offer letter stated:

> For calendar year 2012, your annualized Total Reward will consist of an annual base salary of $200,000 paid in semi-monthly installments… and a discretionary cash bonus payable when year-end cash bonuses are paid to similar situated employees, and in no event later than March 15, 2013, both contingent upon satisfactory performance and conduct and that you remain employed through, and not give or receive notice of termination of your employment prior to, in each case, the applicable payment date.

(Def.'s L.R. 56(a)1 Stmt ¶¶ 6; Pl's L.R. 56(a)2 Stmt. ¶ 6; ECF No. 54-1 at 1.)  The offer letter also required "sixty (60) days advance written notice of your Resignation" and provided that "during the Notice Period… [you] will continue to be paid your base salary…. However, you will not be eligible to receive any compensation other than base salary (i.e., a bonus) if you decide to leave CAM." (Def.'s L.R. 56(a)1 Stmt ¶ 6; Pl's L.R. 56(a)2 Stmt. ¶ 6; ECF No. 54-1 at 2.) The offer letter also states that "this offer is contingent upon… your review and acknowledgment of the provisions of the CAM employee handbook." (ECF No. 54-1 at 4.)

The employee handbook provides further detail on bonus compensation at CAM, explaining that bonuses are discretionary and that employees are ineligible for bonuses if they are not in "good standing":

> Depending on business conditions and Firm performance, and an employee's individual performance and conduct… the Firm may pay a discretionary year-end bonus as incentive compensation to certain eligible employees. Even if eligible, an employee who is not deemed to be in good standing at the time such bonuses are paid, will not receive a bonus. The decision whether to pay a bonus, and if so how much, is at the sole discretion of the Managing Partner.

(Def.'s L.R. 56(a)1 Stmt ¶ 9; Pl's L.R. 56(a)2 Stmt. ¶¶ 9; ECF No. 54-2 at 5.) The handbook then goes on to define "good standing":

> An employee will not be deemed to be in good standing under this policy, as determined by the Firm in its sole discretion, if, among other things, he or she (i) is not, for any reason, an employee of the Firm at the time that bonuses are paid to similarly situated employees, (ii) has given or received notice of termination prior to the bonus payment date, (iii) is subject to a notice of termination requirement and has not complied with any applicable notice requirement or (iv) is deemed by the Firm in its discretion to not be in good standing because, for example, the employee is not meeting the Firm's performance and conduct expectations. Nothing herein limits the Firm's discretion in determining whether an employee is in good standing and/or eligible to receive a discretionary bonus.

*Id.* Finally, the handbook prohibits certain agreements contrary to its terms:

> No employee or representative of the Firm, other than the Firm's Managing Partner, has any authority to make any agreement contrary to the foregoing. Any such purported agreement entered into by the Firm's Managing Partner will not be enforceable unless it is in writing, has been reviewed by Human Resources and is executed by the employee and the member of the Firm's Managing Partner.

(Def.'s L.R. 56(a)1 Stmt ¶ 9; Pl's L.R. 56(a)2 Stmt. ¶¶ 9; ECF No. 54-2 at 6).

### B. 2012 Bonus

CAM found Mr. Del Monaco's performance in 2012 to be satisfactory and he received a bonus of $200,000 following a performance review with Mr. Czech. (Def.'s L.R. 56(a)1 Stmt ¶ 11; Pl's L.R. 56(a)2 Stmt. ¶ 11.) Mr. Del Monaco received his 2012 bonus on May 31, 2013,

3

more than two months after the deadline set out in the offer letter. (Def.'s L.R. 56(a)1 Stmt ¶ 12; Pl's L.R. 56(a)2 Stmt. ¶ 12.)

### C. 2013 Bonus

The parties disagree about many of the events that took place between May 31, 2013, and May 19, 2014. They agree, however, that on May 19, 2014, Mr. Del Monaco emailed Mr. Czech to inquire about his 2013 bonus. (Def.'s L.R. 56(a)1 Stmt ¶ 12; Pl's L.R. 56(a)2 Stmt. ¶ 12.) The same day, Mr. Czech responded by email (in full):

> R: The dollar amount of your bonus will be identical to the bonus you received last year. That said, I do want to sit down with you to discuss a variety of topics.
> VERY unfortunately (as a result of the well-known Fund I company issues) and the project you and Staci are assisting with, I am traveling non-stop and now won't be in the office until May 30th.
> That said, we'll sit down when I get back and go through your review. I'll also provide you with bonus timing at that time. Thanks.

(Def.'s L.R. 56(a)1 Stmt ¶ 19; Pl's L.R. 56(a)2 Stmt. ¶ 19; ECF No. 53-8.)

Also on May 19, 2014, Mr. Del Monaco received news of an upcoming offer of employment from Torchlight Investors, an investment management firm. (Def.'s L.R. 56(a)1 Stmt ¶ 15; Pl's L.R. 56(a)2 Stmt. ¶ 15.) He received and accepted a written offer from Torchlight Investors on May 22 or 23, 2014. (Def.'s L.R. 56(a)1 Stmt ¶ 21; Pl's L.R. 56(a)2 Stmt. ¶ 21.)

By the end of May 2014, all CAM employees but Mr. Del Monaco had received their 2013 bonuses. (Czech Depo. at 61, ECF No. 53-2 at 17; Del Monaco Aff. ¶¶ 32, 36, ECF. No. 54 at 8-9.) On May 30, 2014, Mr. Del Monaco was absent from work and sent another email inquiring about payment of his 2013 bonus.(Def.'s L.R. 56(a)1 Stmt ¶¶ 22-23; Pl's L.R. 56(a)2 Stmt. ¶¶ 22-23; ECF No. 53-9.) Then, on June 1, 2014, Mr. Del Monaco submitted notice of his resignation from CAM, and left CAM 60 days later. (Def.'s L.R. 56(a)1 Stmt ¶ 24; Pl's L.R. 56(a)2 Stmt. ¶ 24; ECF No. 53-10.)

Facts that are disputed will be discussed below where relevant.

**III.     Standard of Review**

Summary Judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "When viewing the evidence, the court must assess the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**IV. Discussion**

   **A. Breach of Contract**

Defendants argue that Mr. Del Monaco was ineligible for a 2013 bonus as a matter of law. According to the CAM employee handbook, an employee is ineligible for a bonus if he or she gives "notice of termination prior to the bonus payment date." (ECF No. 52-3 at 5.) Defendants claim that the unambiguous meaning of the term "bonus payment date" is the date when the individual employee in question receives his or her bonus. Therefore, they argue, regardless of whether or not Mr. Del Monaco was promised a bonus, when he gave notice of termination on June 1, 2014, prior to actually receiving a bonus, he forfeited his eligibility.

For purposes of summary judgment, the "question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157–58 (2d Cir. 2000) (internal citations omitted). "The mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 735 (2005). However, "where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment is improper." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (internal citations and quotation marks omitted). *"*This generally means that a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning. Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (internal citations omitted).

The Court disagrees with Defendants that the term "bonus payment date" unambiguously means the date on which an individual employee receives his or her bonus. In fact, there is substantial textual evidence to the contrary. The term "bonus payment date" must be understood in the context of surrounding provisions of the employee handbook and offer letter. *See HSB Grp., Inc. v. SVB Underwriting, Ltd.*, 664 F. Supp. 2d 158, 190 (D. Conn. 2009) ("when interpreting a contract, the Court must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result") (citing *O'Brien v. U.S. Fid. & Guar. Co.*, 235 Conn. 837, 843 (1996)

(internal quotation marks omitted). The handbook states that an employee is not in good standing if he or she, "(i) is not, for any reason, an employee of the Firm *at the time that bonuses are paid to similarly situated employees*, (ii) has given or received notice of termination prior *to the bonus payment date*…." (ECF No. 52-3 at 5 (emphasis added).) The handbook also explains that "the Firm may pay a discretionary year-end bonus as incentive compensation *to certain eligible employees*. Even if eligible, an employee who is not deemed to be in good standing at *the time such bonuses are paid*, will not receive a bonus." (ECF No. 52-3 at 5 (emphasis added).) Read in context, "bonus payment date" could reasonably be interpreted as a reference to "the time that bonuses are paid to similarly situated employees" and also "the time such bonuses are paid" to "certain eligible employees." The offer letter, which is contingent upon agreement to the provisions of the handbook (ECF No. 54-1 at 4) and thus incorporates those provisions by reference, provides further support for this position. It discusses the date for *2012* compensation as "when year-end cash bonuses are paid to similarly situated employees, and in no event later than March 15, 2013" and later refers back to that date as "the applicable payment date." (*Id.* at 1.) All of these provisions suggest that the term "bonus payment date," as used in the handbook, means the date on which "bonuses are paid to similarly situated employees." Although this is not the only possible interpretation, it is a plausible one, as it harmonizes the related provisions and avoids the potentially unworkable result of an employee waiting indefinitely, even years, for an earned bonus, long after all similarly situated employees had received their bonuses. *See Welch v. Stonybrook Gardens Co-op., Inc.*, 158 Conn. App. 185, 198 (2015) (courts "will not construe a contract's language in such a way that it would lead to an absurd result").

At best, then, the term "bonus payment date" is ambiguous and subject to more than one reasonable interpretation. Summary judgment is therefore inappropriate and extrinsic evidence

(such as Mr. Czech and Mr. Del Monaco's respective intentions and whether there was a custom and practice of payment by a certain date) may be considered by the finder of fact.

Separately, Defendants argue that any promises made by Mr. Czech concerning a bonus for 2013 work, including in his May 19, 2014 email, are unenforceable because they are contrary to the employee handbook, which provides that bonus decisions are discretionary and forecloses unilateral promises concerning compensation contrary to its terms. Defendants are correct that the handbook makes clear that "whether to pay a bonus, and if so how much, is at the sole discretion of the Managing Partner" and "[n]othing herein limits the Firm's discretion in determining whether an employee is in good standing and/or eligible to receive a discretionary bonus." (ECF No. 54-2 at 5.) They are also correct that the employee handbook states that "any agreement contrary to the foregoing" is not enforceable unless properly executed and reviewed. (*Id.* at 6.) However, their argument ultimately fails, because Mr. Czech's May 19, 2014 email was not in fact "contrary to" the employee handbook, and treating it as binding would not violate the handbook provisions stating that bonus decisions are discretionary. Instead, a reasonable jury could find on this record that Czech's promise to pay a bonus to Mr. Del Monaco was simply an *exercise* of the very discretionary power laid out in the handbook.

### B. Promissory Estoppel

Mr. Del Monaco separately brings a claim of promissory estoppel. "To recover on a theory of promissory estoppel, a plaintiff must plead and prove four elements: 1) the promisor made a clear and definite promise; 2) the promisee reasonably relied on the promise; 3) the promise induced the action taken by the promisee; and 4) injustice can be avoided only by enforcement of the promise." *Adair v. Pfizer, Inc.*, 245 F. Supp. 2d 437, 444 (D. Conn. 2003). The parties dispute a number of facts related to the promissory estoppel claim, including whether

Mr. Del Monaco relied on the promise of a bonus to his detriment by forbearing from seeking other employment. (Def.'s L.R. 56(a)1 Stmt. ¶ 13 P's L.R. 56(a)2 Stmt. ¶ 13.)

Any factual disputes that might exist on this point are immaterial, however, because even if Mr. Del Monaco did forbear from seeking employment, it would not be sufficient to prove promissory estoppel. Several courts in this district have held that "forbearance from seeking job opportunities is not sufficient to show detrimental reliance for purposes of promissory estoppel." *Croslan v. Hous. Auth. for City of New Britain*, 974 F. Supp. 161, 168 (D. Conn. 1997). *See also Pavia v. Severn Trent Servs., Inc.*, No. CIV.A. 14CV659 AWT, 2015 WL 477180, at *2 (D. Conn. Feb. 5, 2015) (same) *Curcio v. Hartford Fin. Servs. Grp.,* 472 F. Supp. 2d 239, 245 (D. Conn. 2007) (same); *Martin v. Dupont Flooring Sys., Inc.*, No. CIV.A. 301CV2189 SRU, 2004 WL 726903, at *6 (D. Conn. Mar. 31, 2004), aff'd, 125 F. App'x 369 (2d Cir. 2005). One court to reach the opposite conclusion, *Linker v. Koch Investments, Inc.*, distinguished *Croslan* and held that forbearing from seeking employment *could* constitute reasonable reliance in a case where not seeking employment was akin to "turn[ing] down other job opportunities" because "although [Plaintiff] did not receive any formal job offers… at his level of seniority it was common practice for firms not to extend a formal offer until an applicant requested one."  62 F. Supp. 2d 611, 614–15 (D. Conn. 1999). Mr. Del Monaco does not present any evidence to show that in his case forbearance from seeking employment entailed turning down other job opportunities along the lines of *Linker.* His promissory estoppel claim fails as a matter of law.

## C. Connecticut Wage Statutes

Finally, Mr. Del Monaco claims that the allegedly promised bonus would constitute "wages" under Conn. Gen. Stat. § 31-71a(3), and that Defendants' failure to pay thus entitles him to double damages under Conn. Gen. Stat. § 31-72 . For a bonus to constitute a wage under

Conn. Gen. Stat. 31-71a(3): "(1) the award of compensation must be non-discretionary, (2) the amount of the compensation must be non-discretionary, and (3) the amount of the bonus must be dependent on the employee's performance." *Datto Inc. v. Braband*, 856 F.Supp.2d 354, 371 (D.Conn.2012) (*citing Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 173–77 (2010)).

Mr. Del Monaco cites no evidence to suggest that Mr. Czech's decision regarding whether to award a bonus or the amount of the bonus was non-discretionary. To the contrary, the employee handbook plainly states that both the bonus itself and the amount are discretionary: "the decision whether to pay a bonus and if so, how much, is at the sole discretion of the Managing Partner." (ECF No. 54-2 at 5.) According to the employee handbook, bonus decisions are based on "business conditions and Firm performance, and an employee's individual performance and conduct (including, but not limited to, adhering to the Firm's ethics, compliance and risk management standards)." (*Id.*) Mr. Del Monaco offers no evidence to dispute this.[1] In a case such as this one "when the amount of a bonus is discretionary and is not ascertainable by applying a formula, the bonus does not constitute wages under the statute." *Ziotas v. Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453, 457 (2010).

## V.      Conclusion

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 50) is GRANTED in part and DENIED in part. Summary judgment is granted for Defendants on Counts Two, Three, and Four, and denied on Count One. As the remaining Count is only against Defendants CAM and GP, the case against Mr. Czech is dismissed.

---

[1] And even assuming that Mr. Czech's email of May 19, 2014 promised Mr. Del Monaco a particular bonus amount of $200,000, that promise was merely an exercise of Mr. Czech's discretion and did not convert the bonus into a wage under Conn. Gen. Stat. 31-71a(3).

IT IS SO ORDERED.

                                                  /s/
                                    Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
                August 30, 2016